(Not for publication)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | : | |
|---|---|---|
| DENNIS WIGGINS and | : | |
| ERICKA WIGGINS, | : | |
| | : | |
| Plaintiffs, | : | Civil No. 07-5033 (RBK) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| CLEMENTON POLICE | : | |
| DEPARTMENT, et al., | : | |
| | : | |
| Defendants. | : | |

**KUGLER**, United States District Judge:

This matter comes before the Court on a motion by Plaintiffs Dennis Wiggins and Ericka Wiggins (collectively "Plaintiffs") for entry of default judgment against Defendants Sergeant Charles Grover, Sergeant Randall Freiling, Officer Gordon Schaeffer, Officer Alfred Higginbotham, Officer Mackey (collectively "Defendant Officers"), and Clementon Police Department (collectively "Defendants"). For the reasons set forth below, the Court will deny Plaintiffs' motion.

**I.   BACKGROUND**

During the early morning hours of August 25, 2006, Officer Higginbotham initiated a traffic stop of Mr. Wiggins' van. Sergeants Grover and Freiling, and Officers Mackey and Schaeffer arrived at the scene shortly thereafter. Mr. Wiggins alleges Defendant Officers were

1

rude to him during the stop and yelled profanities at him.  As a result, Mr. Wiggins states he feared for his safety and called 911 to request that a superior officer come to the scene.  Plaintiff alleges further the 911 operator informed him there were no officers superior to sergeant and that no other officers would respond.  Defendant Officers issued Mr. Wiggins tickets for careless driving and failing to use a seatbelt and told him he was free to leave the scene.  After driving approximately thirty feet, however, Mr. Wiggins alleges Sergeant Grover opened the door of the van, ordered him to pull the van over again, and exclaimed, "He ran over my foot, he ran over my foot!"  Defendant Officers then instructed Mr. Wiggins to get out of the van.  While in the process of complying, Mr. Wiggins alleges one of the officers hit him in the back and then Defendant Officers together handcuffed him, dragged him at least ten feet by the handcuffs, stomped on him while he was on the ground, and placed him under arrest.

     Later, Defendant Officers filed separate police reports claiming Mr. Wiggins had intentionally dragged Sergeant Grover two-hundred fifty-six feet with his lower body trapped underneath the van.  Mr. Wiggins' bail was set at $100,000 for the purported offense, and he remained incarcerated for nearly twenty-four hours.  On August 1, 2007, Plaintiff was completely exonerated during a bench trial at which the presiding judge expressed his belief that Mr. Wiggins' arrest was premised on race discrimination and that Defendant Officers had lied during the trial.

     Mr. Wiggins and his wife filed their complaint on October 19, 2007, alleging violations of his constitutional rights and multiple torts, including malicious prosecution, false imprisonment, assault and battery, negligent and intentional infliction of emotional distress, and loss of consortium.  On November 16, 2007, he requested and later received a Clerk's entry of

default, because Defendants had not answered the complaint. On December 12, 2007, the parties entered into a consent order vacating the default and giving Defendants thirty days to file an answer. Nevertheless, Defendants still did not timely answer Plaintiffs' complaint, and on January 16, 2008, Plaintiffs filed the motion now before the Court. Defendants never responded to Plaintiffs' motion for default; however, one week after it was filed, they answered Plaintiffs' complaint.

## II.   STANDARD

Federal Rule of Civil Procedure 55(b)(2) authorizes courts to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading. Anchorage Assoc. v. Virgin Is. Bd. of Tax Rev., 922 F.2d 168, 177 n.9 (3d Cir. 1990) ("When a defendant fails to appear . . . the district court or its clerk is authorized to enter a default judgment based solely on the fact that the default has occurred."). The entry of a default judgment is largely a matter of judicial discretion, although the Third Circuit has emphasized that such "discretion is not without limits, however, and we repeatedly state our preference that cases be disposed of on the merits whenever practicable." Hritz v. Woma Corp., 732 F.2d 1178, 1181 (3d Cir. 1984) (citations omitted).

Although the Court should accept as true the well-pleaded factual allegations of the complaint, the court need not accept the moving party's legal conclusions or allegations relating to the amount of damages. Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990); Directv, Inc. v. Asher, No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing Charles A. Wright, et al., 10A Federal Practice and Procedure § 2688, at 58-59, 63 (3d ed.1998)). Consequently, before granting a default judgment, the Court must first ascertain whether "the

unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." Asher, 2006 WL 680533, at *1 (citing Wright, et al., § 2688, at 63). The Court must therefore determine if Plaintiffs have stated a legitimate cause of action.

### III.    DISCUSSION

Prior to entering default judgment, the Court must also consider four factors: (1) whether the plaintiff will be prejudiced if default is not granted, (2) whether the defendant has a meritorious defense, (3) whether the defendant's delay was the result of culpable misconduct, and (4) the effectiveness of alternative sanctions. Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 73 (3d Cir. 1987). Before awarding a default judgment, the Court must also determine whether the moving party's complaint establishes a legitimate cause of action. DirecTV v. DeCroce, 332 F. Supp. 2d 715, 717 (D.N.J. 2004), rev'd on other grounds sub nom. DIRECTV, Inc. v. Pepe, 431 F.3d 162 (3d Cir. 2005).

#### A.    Whether Plaintiff Will be Prejudiced if Default is Not Granted

Plaintiffs will not face prejudice if default is not granted. While Plaintiffs have no other means of seeking damages for the harm allegedly caused by Defendants, since Plaintiffs filed their motion for default, Defendants have at last answered the complaint. Accordingly, the concern that Plaintiffs will not be able to vindicate their rights is mitigated by Defendants' answer, albeit tardy. As such, the first factor weighs against entry of default judgment.

#### B.    Whether Defendants Have a Meritorious Defense

Defendants assert twenty-nine affirmative defenses in their late-filed answer, some of which are obviously inapplicable to this case, but at least two of which pose potentially meritorious defenses. First, Defendants contend Defendant Officers are entitled to qualified

immunity. Qualified immunity protects police officers, like other governmental officials, from liability for civil damages where their conduct in performing a discretionary function "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Orsatti v. New Jersey State Police, 71 F.3d 480, 483 (3d Cir. 1995) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). It is also a complete bar to liability.

In addition, Defendants assert immunity under the New Jersey Tort Claims Act. That Act provides that public entities shall not be held liable "for acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct." N.J. Stat. Ann. § 59:2-10. A second pertinent provision of the New Jersey Tort Claims Act provides, in part, "a public employee is not liable if he acts in good faith in the execution or enforcement of any law. Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment." N.J. Stat. Ann. § 59:3-3. Thus, Defendants have proffered at least three fact-specific and potentially meritorious affirmative defenses, thereby weighing against dismissal.

### C.   Whether Defendants' Delay was the Result of Culpable Misconduct

Plaintiffs have not pointed out any culpable misconduct by Defendants apart from the tardiness of their answer. Nor have Defendants—because they did not oppose Plaintiffs' motion—offered an explanation for their delinquency. As a result, the Court can only suppose Defendants' delay was the result of culpable misconduct. Nevertheless, Defendants have now filed an answer and appear ready and willing to defend Plaintiffs' action at this time. As a result, the Court deems this factor neutral.

### D.   Whether Alternative Sanctions Would Be Effective

There is no evidence that monetary sanctions would not be more appropriate than

dismissal in this case. Defendants' failure to timely file an answer is their lone transgression; therefore, there is no repeated conduct that might necessitate the harsher penalty of dismissal. Cf. Derzack v. County of Allegheny, Pa., 173 F.R.D. 400, 417 (W.D. Pa. 1996) (finding dismissal warranted where party's repeated misconduct included failure to comply with monetary sanctions), aff'd Derzack v. County of Allegheny Children & Youth Servs., 118 F.3d 1575 (3d Cir. 1997). Hence, this factor militates against dismissal.

## IV.   CONCLUSION

In sum, the Emcasco factors weigh against the extreme sanction of dismissal. Therefore, regardless of whether Plaintiffs establish viable claims, dismissal for the delay in answering Plaintiffs' complaint is not warranted. The Court will, however, order Defendants to pay Plaintiffs' costs and fees incurred in filing their motion for default judgment. An accompanying order shall issue today.


Dated: 8/4/08                                                      s/ Robert B. Kugler
                                                                          ROBERT B. KUGLER
                                                                          United States District Judge