[Doc. No. 27]

**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| **DENNIS WIGGINS** | : |
| **and** | : |
| **ERICKA WIGGINS** | : |
| | : |
| Plaintiffs, | : |
| | : |
| v. | :   **Civil No. 07-5033 (RBK/JS)** |
| | : |
| **CLEMENTON POLICE DEPT.,** | : |
| **SERGEANT CHARLES GROVER,** | : |
| **SERGEANT RANDALL FREILING** | : |
| **OFFICER GORDON SCHAEFFER,** | : |
| **OFFICER ALFRED HIGGINBOTHAM,** | : |
| **OFFICER MACKEY,** | : |
| | : |
| Defendants. | : |

<u>**OPINION AND ORDER**</u>

This matter is before the Court on the "Motion to Compel Defendant Grover to Answer Questions About His Failure to Report Income Taxes and for Leave to Re-Depose Defendant Grover" [Doc. No. 27] filed by Plaintiffs, Dennis and Ericka Wiggins. Plaintiffs seek to compel the deposition testimony of Defendant Charles Grover (hereinafter "Defendant") regarding his alleged failure to report income on his tax returns. Defendants oppose Plaintiffs' motion. [Doc. No. 29.] The Court has also received and considered Plaintiffs' reply [Doc. No. 30]. Pursuant to Fed. R. Civ. 78 and L. Civ. R. 37.1(b)(3), the Court exercises its

1

discretion to decide this discovery issue without oral argument.
For the reasons to be discussed, Plaintiffs' motion is DENIED.

BACKGROUND

Plaintiffs brought this action alleging civil rights
violations pursuant to 42 U.S.C. § 1983, including, inter alia,
an unlawful motor vehicle stop, unlawful arrest, use of excessive
force, and infliction of emotional distress.  (Cmplt. [Doc. No.
1] at ¶ 35.)  The Complaint arises out of an August 25, 2006
incident when Plaintiff Dennis Wiggins (hereinafter "Plaintiff")
was pulled over as part of a motor vehicle stop by Defendant
Officer Alfred Higginbotham.  (See Cmplt. ¶¶ 12-3.)  Defendants
Grover, Mackey, Freiling, and Schaeffer arrived at the scene
shortly thereafter.  (Cmplt. ¶ 14.)  Plaintiff alleges that
during the traffic stop defendant officers yelled profanities at
him, and he feared for his safety.  (See Cmplt. ¶¶ 15-6.)
Plaintiff was issued tickets for careless driving and failure to
use a seatbelt.  (Cmplt. ¶ 18.)

According to Plaintiff, as he was driving away from the
scene, Defendant opened his van door, yelling for him to pull
over.  (See Cmplt. ¶ 20.)  Defendant began yelling to the other
officers, "He ran over my foot!" (Cmplt. ¶ 21.)  Upon request by

the defendant officers, Plaintiff exited his van.  (See Cmplt. ¶¶ 22-3.) Defendant officers, working in concert, proceeded to stomp on Plaintiff while he was on the ground, handcuff him, and arrest him.  (See Cmplt. ¶¶ 24-6.)

Defendant Grover pursued a worker's compensation claim as a result of being struck by Plaintiff's vehicle.  (Def. Opp. [Doc. No. 29] at ¶ 15.)  In an Order dated February 21, 2008, worker's compensation Judge Richard E. Hickey approved the settlement of Defendant's worker's compensation claim.  (Def. Opp. ¶ 15.) Plaintiff contends, however, that Defendant's worker's compensation claim alleging injuries from his interaction with Plaintiff is false.  (Pl. Br. [Doc. No. 27] at  3.)

On March 24, 2009, Plaintiff's counsel deposed Defendant. (See Def. Opp. ¶ 5.)  Defendant testified that beginning in approximately 1990 he worked "on and off" as a locksmith for his father's company, Access Lock and Safe.  (See Grover Dep. [Doc. No. 29-4] at 11:22-12:6.)  Defendant further testified that between 1990 and 1998 his father gave him less than $500.00 for his work.  (See Grover Dep. 43:17-21.)  Defendant's father died in January of 1998, after which his father's partner took over the commercial accounts of Access Lock and Safe.  (See Grover Dep. 360:13-361:3.)  Defendant testified that between 1998 and

3

2008 he performed locksmith related work for friends for which there was "some money."  (See Grover Dep. 366:12-367:10.)

Plaintiff's motion arises out of an objection that was made during the course of Defendant's deposition. Specifically, after Defendant testified that he did not report to the IRS "every cent" of the less than $500.00 that his father gave him between 1990 and 1998 for helping out with Access Lock and Safe, Plaintiff's counsel asked Defendant why he did not report the income to the IRS.  (See Grover Dep. 15:3-7.)  Defendant was instructed not to answer the question and counsel participated in a telephone conference with the Court to discuss the issue.  (See Grover Dep. 15:10-26:20.)[1]  The Court ruled that defense counsel could object and instruct Defendant not to answer any questions regarding this issue.  (See Grover Dep. 24:12-25:2.)  The Court also granted the Plaintiff leave to file a motion on the issue. (Grover Dep. 25:3-5.)  When Plaintiff's counsel subsequently asked Defendant if he reported any income he earned from Access Lock and Safe between 1998 and 2008, defense counsel objected and instructed Defendant not to answer the question.  (See Grover

---

[1]The Court declines to find that Defendant's limited answers waived his right to object to this line of questioning.  Defendant's answers were not so pervasive as to indicate that he intentionally relinquished his objection to testifying about his income taxes.

4

Dep. 366:12-368:2.)  Defense counsel argues that this line of
questioning would harass and intimidate the Defendant.  (Def.
Opp. 4-5.)

DISCUSSION

The Federal Rules of Civil Procedure "allow broad and
liberal discovery."  Pacitti v. Macy's, 193 F.3d 766, 777 (3d
Cir. 1999).  Pursuant to Federal Rule of Civil Procedure
26(b)(1), the scope of discovery is as follows: "Parties may
obtain discovery regarding any nonprivileged matter that is
relevant to any party's claim or defense. . . . For good cause,
the court may order discovery of any matter relevant to the
subject matter involved in the action.  Relevant information need
not be admissible at the trial if the discovery appears
reasonably calculated to lead to the discovery of admissible
evidence."  Fed. R. Civ. P. 26(b)(1).  Courts have interpreted
the federal rules to mean that discovery encompasses "any matter
that bears on or reasonably could lead to other matters that
could bear on any issue that is or may be in the case."  Kopacz
v. Del. River and Bay Auth., 225 F.R.D. 494, 496 (D.N.J. 2004).

The discoverability of information is not determinative of
its admissibility as evidence at trial.  See Nestle Foods Corp.

v. Aetna Cas. & Sur. Co., Civ. No. 89-1701 (CSF), 1990 WL 191922, at *4 (D.N.J. Nov. 19, 1990) (holding drafting history of insurance policies is discoverable although it may not be admissible at trial).  "The fact that the information sought will be admissible at trial is a strong argument in favor of discovery."  8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2008, at 111 (2d ed. 1994).  But the converse is not true.  Id.  "Admissibility at the trial is not the limit of discovery, and discovery may properly be had of inadmissible matter."  Id.  Thus, making a determination on the issue of admissibility premature at the discovery phase.  See Nestle, 1990 WL 191922, at *4.

Both Plaintiff and Defendant briefed the admissibility at trial of Defendant's alleged failure to report income on his tax returns.  Plaintiff, the moving party, argues that Defendant's alleged failure to pay income taxes is relevant to his credibility, and therefore, Plaintiff requests permission to re-depose Defendant about whether Defendant reported income on his tax returns for the last 10 years related to his personal locksmith business.  (Pl. Br. 7.)  Plaintiff argues that pursuant to Federal Rule of Evidence 608, evidence about whether a witness reported his or her income to the state or federal government is

6

admissible as relevant to Defendant's character for truthfulness. (See Pl. Br. 5.)  According to Plaintiff, Defendant's credibility is important to the case (Pl. Br. 3), and therefore, Defendant's alleged failure to report federal income is admissible as a basis for impeachment (Pl. Br. 5).

In opposition, Defendant argues that Plaintiff's motion should be denied because the probative value of the evidence sought by Plaintiff is substantially outweighed by the danger of unfair prejudice to Defendant.  (Def. Opp. 6.)  Defendant argues that his credibility is not the "central issue" in the case, and therefore, the case law cited by plaintiff is distinguishable from the present case.  (See Def. Opp. 8-9.)  Defendant also argues that the remoteness in time of his failure to report income he received beginning in 1998, diminishes the probative value of the evidence.  (Def. Opp. 11.)

As argued in Defendant's brief, Defendant's alleged failure to pay income taxes may well be inadmissible or may be admissible for a limited purpose under the Federal Rules of Evidence.  The fact that Defendant's alleged failure to report income on his tax returns may not be admissible at trial, however, is not dispositive of whether this topic is a proper subject of discovery.  See Nestle, 1990 WL 191922, at *4.  Accordingly, it

7

is premature to rule on the admissibility of such evidence at trial. See id.  The question of whether information obtained in Defendant's deposition will be admissible is best left until trial.  Thus, in arguing whether testimony regarding Defendant's alleged failure to report income on his tax returns is admissible at trial, neither Plaintiff nor Defendant addressed the issue squarely before the Court.

The real issue is not whether evidence of Defendant's alleged failure to report income on his tax returns will be admissible at trial, but rather, whether such information is discoverable.  Although the Federal Rules of Civil Procedure embrace a liberal policy for providing discovery, the scope of discovery has ultimate and necessary boundaries.  Schneck v. Int'l Bus. Machs. Corp., Civ. No. 92-4370 (GEB), 1993 WL 765638, at *2, (D.N.J. July, 27, 1993).  In setting the appropriate bounds of discovery in this case the Court is mindful that the Third Circuit recognizes the public policy favoring non-disclosure of income tax returns as confidential communications between a taxpayer and the government.  DeMasi v. Weiss, 669 F.2d 114, 119 (3d Cir. 1982).  "While tax returns do not enjoy an absolute privilege from discovery, a public policy against unnecessary public disclosures arises from the need, if the tax

laws are to function properly, to encourage taxpayers to file complete and accurate returns." Tele-Radio Systems Ltd. v. De Forest Elecs., Inc., 92 F.R.D. 371, 375 (D.N.J. 1981).

A court may order the disclosure of tax returns and income tax information if the requesting party's need for the returns and information outweighs the resisting party's privacy interests. See Schneck, 1993 WL 765638, at *8. This analysis requires a two step approach. Id. First, the tax information must be relevant. Id. Relevance, in this context, requires that the party whose tax information is sought has made his or her income an issue in the case. DeMasi, 669 F.2d at 120 n.8; Schneck, 1993 WL 765638, at *8 (compelling production of plaintiff's income tax returns because records reflecting income are relevant to plaintiff's claim of lost wages, but limiting production only to items relating to wage and salary income); Tele-Radio Systems, 92 F.R.D. at 375 (finding defendants' income tax returns not discoverable because defendants had not made their income an issue in case). Second, the party seeking the tax return information must demonstrate a compelling need for the returns because the information is not otherwise readily available. Schneck, 1993 WL 765638, at *8; Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572,

585 (D.N.J. 1997) (declining to compel disclosure of income tax
returns, although relevant, because alternative sources of
information available).  Courts across the country use the two
step approach set forth above to determine whether to order the
production of income tax returns.  See, e.g., Raba v. Suozzi,
Civ. No. 06-1109 (DRH/AKT), 2007 WL 81932, at *1 (E.D.N.Y. Jan.
9, 2007); Hawkins v. S. Plains Int'l Trucks, Inc., 139 F.R.D.
679, 681-2 (D. Colo. 1991).

        Although the cited authority is not directly on point, in
that it discusses the disclosure of tax returns rather than
questioning a witness at a deposition about tax information, the
authority is sufficiently analogous to guide the Court's ruling.
This authority evidences that courts have "generally refused to
compel disclosure of income tax returns or related information
from litigants who have not put their own income at issue."
DeMasi, 669 F.2d at 120 n. 8.  See, e.g., Methodist Hosps., Inc.
v. Sullivan, 91 F.3d 1026, 1031 (7th Cir. 1996) (noting that
public disclosure of tax returns is "highly restricted");
Robinson v. Duncan, 255 F.R.D. 300, 302 (D.D.C. 2009)
(recognizing a general policy limiting disclosure of income tax
returns); Aliotti v. Vessel Senora, 217 F.R.D. 496, 497 (N.D.

Cal. 2003) (recognizing public policy against unnecessary
disclosure of tax returns).

A threshold determination of relevancy is also necessary to
compel a witness to answer questions regarding tax information.
See Swift Bros. v. Swift & Sons, Inc., Civ. No. 89-5253, 1992 WL
201002, at *1-2 (E.D. Pa. Aug. 11, 1992).  In Swift, the court
granted plaintiff's motion to compel the attendance of defendant
at a deposition to question him about his personal tax returns
and the corporate tax returns of the defendant.  Id. at *1-2.  In
permitting the plaintiff to depose defendant about his tax
returns, the court reasoned that the tax information was relevant
to the outcome of the case, particularly within the broad test of
relevancy at the discovery stage.  Id. See also Raba, 2007 WL
81932, at 2.

Here, the Court rules that Defendant is not required to
answer deposition questions regarding his alleged failure to
report income on his tax returns.  The Court finds that
Plaintiff's need for the information does not outweigh
Defendant's privacy interests.  Defendant's alleged failure to
report income on his tax returns for his work as a locksmith over
the last 10 years is not relevant to whether Defendant violated
Plaintiff's civil rights.  Further, Defendant has not voluntarily

injected issues regarding his income into the case.  Unlike
Schneck, where the court compelled the plaintiff to produce tax
returns because the records were relevant to his claim of lost
wages, here, Defendant's income tax information is not relevant
to whether he unlawfully arrested or used excessive force against
the Plaintiff.  See Schneck, 1993 WL 765638, at *8.

The main thrust of Plaintiffs' argument is that their motion
should be granted because Defendant's alleged failure to report
income taxes is relevant for impeaching Defendant's credibility.
The Court disagrees.  A defendant's credibility is at issue in
almost every case.  If the Court accepts Plaintiffs' argument,
then in almost every case a party's tax information would be
discoverable.  This would essentially eviscerate the Third
Circuit's policy against unnecessary disclosure of income tax
returns and related information and would constitute an
unreasonable intrusion into Defendant's privacy.  See Raba,
supra, 2007 WL 81932, at *1 ("[a]lthough tax returns are not
privileged, courts have been reluctant to order their routine
disclosure in the course of discovery").

Plaintiffs cite United States v. Lundy, 416 F. Supp. 2d 325,
335 (E.D. Pa. 2005), in support of the proposition that the Third
Circuit has repeatedly upheld the admissibility of a party's

failure to pay, or to truthfully and accurately report taxes, on the basis that such failures are "relevant to the issue of honesty" and "probative of [a party's] credibility."  (Pl. Br. 5.)  However, the court in Lundy refused to permit cross-examination of the defendants on their failure to file or pay taxes.  Id. at 336.  Plaintiffs also cite United States v. Sullivan, 803 F.2d 87 (3d Cir. 1986), and United States v. Bustamante, 45 F.3d 933 (5th Cir. 1995), in support of their motion.  In both cases the court permitted the government to cross-examine the defendants about the accuracy of their federal income tax forms to impeach their credibility because the defendants' income was relevant to the cases. See Sullivan, 803 F.2d at 88 (defendant was convicted of extorting money from owners of illegal gambling and houses of prostitution in exchange for police protection); Bustamante, 45 F.3d at 935 (defendant was charged with using his public office for personal enrichment by accepting bribes and illegal gratuities).  As discussed supra, the case before this Court is distinguishable from Sullivan and Bustamante because here, Defendant is being charged with excessive force and infliction of emotional distress, claims that are not related to Defendant's income.

Defendant has not put his income tax return information at issue in the case.  Further, Plaintiffs have not demonstrated a compelling need or good cause to question Defendant about his income tax returns.  Because Defendant's locksmith business has no connection to the incident in question and Defendant's work as a police officer, and because Defendant's income is not a relevant issue in the case, Plaintiff has not demonstrated a compelling need for Defendant's tax information.  Therefore, the Court will not compel Defendant to answer questions regarding his alleged failure to report income on his tax returns.

Accordingly, for all the foregoing reasons,

IT IS on this 30th day of July 2009 hereby

ORDERED that Plaintiff's Motion to Compel Defendant Grover to Answer Questions About His Failure to Report Income Taxes and for Leave to Re-Depose Defendant Grover is DENIED.

14